UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| DELTA L. EADY,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN TOW & RECOVERY, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:26-cv-145-TRM-MJD |

**REPORT AND RECOMMENDATION**

This case is filed pro se and without prepayment of fees by Plaintiff Delta L. Eady ("Plaintiff"). Currently before the Court are Plaintiff's application to proceed *in forma pauperis* ("IFP Application") [Doc. 1], and his Complaint [Doc. 2; Doc. 10 (supplement)], which is subject to screening pursuant to 28 U.S.C. § 1915(e)(2). As set forth below, Plaintiff has failed to state a proper claim pursuant to applicable § 1915 standards. His claims should be dismissed and his IFP Application terminated as moot.

## I. STANDARDS

Because Plaintiff is proceeding IFP, the Court is required to screen his complaint before any summons are issued, and to recommend dismissal if the action, or any portion of the action, is frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see also Chase Manhattan Bank Mortg. Corp. v. Smith*, 507 F.3d 910, 915 (6th Cir. 2007).

The standard required by § 1915(e)(2) to properly state a claim for which relief can be granted is the same standard required by Federal Rule of Civil Procedure 12(b)(6). *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008); *accord Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir.

2007). To avoid dismissal under Rule 12(b)(6), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not state "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). But it must contain more than mere "labels and conclusions, . . . a formulaic recitation of the elements," or "naked assertions . . . without further factual enhancement." *Id.* at 555, 557 (citations omitted). In other words, the complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). Stated differently, "the court must be able to draw a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *KSR Int'l Co. v. Delphi Auto. Sys.,* 523 F. App'x 357, 358–59 (6th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678).

In applying these standards, the Court also considers that the pleadings of pro se litigants are to be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, pro se plaintiffs must abide by "basic pleading standards," and the role of the court is not to "conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (internal quotation marks and citations omitted). "[P]ro se litigants are not relieved of the duty to develop claims with an appropriate degree of specificity." *Kafele v. Lerner, Sampson, Rothfuss, L.P.A*, 161 F. App'x 487, 491 (6th Cir. 2005).

Finally, federal courts are courts of limited jurisdiction. When presented with a case, federal courts "presume" they lack jurisdiction until the party asserting jurisdiction demonstrates otherwise. *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citing *Bender v. Williamsport Area Sch.*

*Dist.*, 475 U.S. 534, 546 (1986)). If at any time the Court determines it lacks subject matter jurisdiction, the Court "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## II. ANALYSIS

This is the second lawsuit Plaintiff has filed arising from the same set of facts. *See* Case No. 1:24-cv-339 (the "First Lawsuit"). In the First Lawsuit, Plaintiff sued ATR, Aaron Black, and four other defendants[1] [First Lawsuit, Doc. 27 (Sec. Am. Compl.)]. Plaintiff did not assert the existence of any federal question or allege any federal cause of action; rather, he alleged the Court had diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction over Plaintiff's 13 state law claims under 28 U.S.C. § 1367 [*id.*].

On March 23, 2026, the Court dismissed the first Lawsuit without prejudice, pursuant to Federal Rule of Civil Procedure 4(m):

> Consequently, the Court finds no basis for a further extension. The operative complaint was filed on April 14, 2025, yet the ATR Defendants have never been properly served with the operative complaint in the eleven months since its filing. The Court has provided Plaintiff with repeated opportunities to cure procedural deficiencies—granting IFP status, permitting multiple amendments to his complaint, declining to dismiss the action for service failures in November 2025—and issued explicit instructions on what was required to cure such deficiencies. Each accommodation has been met with non-compliance, unauthorized filings, and attempts to relitigate matters already decided. The Court has previously warned Plaintiff that further violations of the Federal Rules of Civil Procedure and Local Rules could result in dismissal of his case. Unfortunately, these warnings did not produce compliance.

[First Lawsuit, Doc. 92 at Page ID # 624]. Plaintiff filed the instant action just over two months later, on May 29, 2026 [Doc. 2].

---

[1] Plaintiff's second amended complaint was the operative complaint in the First Lawsuit [First Lawsuit, Doc. 81 at Page ID # 571]. Plaintiff named Gregory Black, the alleged "sole owner and operator of an unregistered business entity operating under the trade name American Towing & Recovery (ATR), which conducts business at 5910 Shaw Ave, Chattanooga, TN." [First Lawsuit, Doc. 27 at Page ID # 147]. He also named an individual named Michael Otto and two "Jane Doe" defendants [*id.*]. None of those defendants are named in this action.

Like the First Lawsuit, this action centers on Plaintiff's engagement of Defendant American Tow & Recovery ("ATR")—which Plaintiff alleges is a "towing, storage, transportation-related, and vehicle-service business open to and serving the public"—to repair his semi-truck.[2] Plaintiff also sues the following seven defendants:

1. Aaron Black, "the registered agent, principal, and controlling individual" of ATR;
2. Chattanooga Impound Services, LLC ("CIS"), which "operates a storage lot located at or near 1625 Shepard Road, Chattanooga, Tennessee;"
3. Larry Bailey, an employee, agent, representative, or associate of CIS;
4. Michael Phillips, an employee, agent, representative, or associate of CIS;
5. 319 January, LLC ("319 January"), which is an "entity involved in ownership, leasing, management, and/or control of property used by Defendants;"
6. Wick Spears, "the owner and/or registered agent of 319 January;"
7. Thomas Hyde, "the owner and/or lessor of property used in connection with the conduct alleged herein."

[*Id.* at Page ID # 14–15].

The complaint alleges that after Plaintiff turned his semi-truck over to ATR for repairs, one or more of the Defendants failed and/or refused to repair the truck, prevented Plaintiff from engaging another company to repair the truck, used profane and threatening language toward Plaintiff, and refused to allow Plaintiff to reclaim the truck without arbitrary conditions and inconsistent fees:

> 24. On or about July 25, 2023, Plaintiff contacted [ATR] concerning towing and repair of Plaintiff's semi-truck.

---

[2] Plaintiff asserts this Defendant may also be known as American Towing & Recovery, American Tow & Recovery, LLC, or American Towing & Recovery, LLC [Doc. 2 at Page ID # 14].

25. Plaintiff informed Defendant Aaron Black of the truck's mechanical issues and Plaintiff's inability to secure long-term lodging accommodations.

26. Plaintiff further informed Defendants of Plaintiff's physical disability and dependence upon the semi-truck for transportation, mobility, and essential daily functioning.

27. Defendants represented that Plaintiff's semi-truck would be stored pending repairs and assured Plaintiff that storage would initially be free.

28. In reliance upon Defendants' representations, Plaintiff relinquished possession and control of his semi-truck to Defendants.

29. Defendants placed Plaintiff's semi-truck on property controlled and/or utilized by [CIS].

30. After obtaining possession of the vehicle, Defendant Aaron Black repeatedly attempted to purchase Plaintiff's semi-truck. Plaintiff repeatedly declined.

31. Defendants subsequently imposed fabricated and escalating charges, delayed repairs, failed to communicate consistently, and interfered with Plaintiff's ability to obtain independent repair services.

32. On or about October 6, 2023, Andrew Smith paid approximately $1,275 to ATR on Plaintiff's behalf after Defendants demanded substantially inflated charges as a condition of continued access to the vehicle.

33. Plaintiff alleges that the receipt provided in connection with said payment was false, misleading, and fraudulent.

34. Plaintiff later arranged repairs through Chattanooga Truck Repair Center ("CTRC"), and Defendants repeatedly agreed to deliver the truck for repair.

35. Defendants repeatedly failed to deliver the vehicle as agreed, causing multiple missed repair appointments and resulting in CTRC ultimately refusing to accept the truck.

36. During communications regarding disputed charges and repair arrangements, Defendant Aaron Black directed threatening, intimidating, abusive, and profane language toward Plaintiff and third parties assisting Plaintiff.

37. Defendants further interfered with Plaintiff's efforts to obtain independent repair services by imposing arbitrary conditions and inconsistent fees concerning movement and release of the vehicle.

> 38. Defendants intentionally leveraged Plaintiff's known physical disability and dependence upon the vehicle for mobility in order to pressure Plaintiff into payment and compliance.
>
> 39. On or about December 4, 2023, Plaintiff appeared to retrieve his semi-truck after Defendants demanded additional payment.
>
> 40. Defendants conditioned release of the vehicle upon payment and execution of documents prepared by Defendants.
>
> 41. Plaintiff alleges that Defendants utilized threats, intimidation, coercion, and Plaintiff's known physical vulnerability to force payment and compliance.
>
> 42. As a direct and proximate result of Defendants' conduct, Plaintiff suffered financial losses, business interruption, loss of transportation access, loss of mobility, emotional distress, lodging expenses, and other damages.

[Doc. 2 at Page ID # 15–18]. Unlike the First Lawsuit—which, again, was based on the same set of facts—Plaintiff's complaint now alleges a claim under the Americans with Disabilities Act ("ADA"), as well as state law claims for fraud, conversion, Tennessee Consumer Protection Act violations, intentional infliction of emotional distress, breach of contract, bailment/negligent bailment, and declaratory and injunctive relief (collectively, the "State Law Claims") [Doc. 2 at Page ID # 18–23]. The Court addresses the ADA claim and the State Law Claims below.

**A. Plaintiff's ADA Claims**

Plaintiff asserts ADA claims under "Title III" and "Title V" [*id.* at Page ID # 18–20]. Plaintiff asserts he is a "paraplegic individual" and "is a qualified individual with a disability within the meaning of the [ADA]." [*Id.* at Page ID # 12].

Regarding the ADA Title III claim, Plaintiff does not assert the specific statute violated by Defendants [*Id.* at Page ID # 18–19], but the Court assumes Plaintiff is attempting to invoke § 12182, which prohibits discrimination based on disability by places of public accommodation. 42 U.S.C. § 12182(a); *see also Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 119 (2005). In support of this claim, Plaintiff provides:

> 45. Defendants own, lease, operate, manage, control, and/or maintain places of public accommodation and businesses affecting commerce within the meaning of 42 U.S.C. § 12181.
>
> 46. Defendants provide towing, storage, transportation-related, and repair-related services to members of the public.
>
> 47. Defendants denied Plaintiff full and equal enjoyment of Defendants' services, facilities, privileges, advantages, and accommodations.
>
> 48. Defendants intentionally leveraged Plaintiff's disability-related dependence upon his semi-truck for mobility and transportation.
>
> 49. Defendants interfered with Plaintiff's access to transportation-related services and imposed discriminatory barriers affecting Plaintiff because of his disability-related mobility limitations.
>
> 50. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injury and irreparable harm.

[Doc. 2 at Page ID #18–19].

Plaintiff's ADA Title V claim falls under § 12203, which prohibits retaliation against an individual for objecting to an unlawful act under the ADA, and prohibits interference, coercion, threats, or intimidation of an individual who exercises or enjoys any rights granted or protected by the ADA. 42 U.S.C. § 12203(a), (b). In this regard, Plaintiff alleges:

> 52. Plaintiff engaged in protected activity by questioning Defendants' conduct, disputing fabricated charges, seeking access to his property, and attempting to obtain independent repair services.
>
> 53. Defendants retaliated against Plaintiff and interfered with Plaintiff's exercise of ADA-protected rights through coercion, threats, intimidation, obstruction, abusive conduct, and interference with Plaintiff's efforts to obtain transportation-related services.
>
> 54. Defendants intentionally used their control over Plaintiff's mobility equipment and transportation access as leverage to force payment and compliance.
>
> 55. Defendants' conduct violated 42 U.S.C. § 12203.
>
> 56. Plaintiff suffered injury and irreparable harm as a direct and proximate result of Defendants' conduct.

[Doc. 2 at Page ID # 19–20].

As set forth below, Plaintiff's ADA claims should be dismissed for numerous reasons.

*1. Plaintiff's ADA Claims are Time-Barred*

Plaintiff's ADA claims are barred by the statute of limitations. It is appropriate for a district court to consider applicable statutes of limitations and dismiss claims that are time-barred at the screening stage. *Norman v. Granson*, No. 18-4232, 2020 WL 3240900, at *2 (6th Cir. Mar. 25, 2020) (affirming district court's dismissal of time-barred claims at screening); *Watson v. Wayne Cnty.*, 90 F. App'x 814, 815 (6th Cir. 2004) (affirming district court's dismissal of claims as time-barred at screening and stating that, "[i]f a statute of limitations defense clearly appears on the face of a pleading, the district court can raise the issue sua sponte.") (internal citation omitted); *Castillo v. Grogan,* 52 F. App'x 750, 751 (6th Cir. 2002) ("When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, sua sponte dismissal of the complaint as frivolous is appropriate." (internal citation omitted)).

The United States Court of Appeals for the Sixth Circuit has articulated the statute of limitations applicable to ADA actions:

> The ADA itself does not contain a specific statute of limitations. Thus, federal courts are required to adopt the statute of limitations of the state cause of action most closely analogous to an ADA claim. For ADA claims arising in Tennessee, we apply the one-year statute of limitations which governs § 1983 claims.

*Meeks v. Tennessee Department of Correction*, No. 17-6292, 2018 WL 5779922, at *2 (6th Cir. May 29, 2018) (internal citations omitted); *see also Evans v. Vanderbilt Univ. Sch. of Med.,* 589 F. Supp. 3d 870, 884 (M.D. Tenn. 2022) ("[C]auses of action arising under the ADA and filed in Tennessee" are subject to "a one-year limitations period."). "The 'continuing violation' doctrine provides that when 'there is an ongoing, continuous series of discriminatory acts, they may be

challenged in their entirety as long as one of those discriminatory acts falls within the limitations period.'" *Singh v. Procter & Gamble Co.,* No. 23-3414, 2024 WL 2070683, at *2 (6th Cir. Jan. 24, 2024) (quoting *Kovacevich v. Kent State Univ.,* 224 F.3d 806, 829 (6th Cir. 2000)). The Court therefore looks to the allegations of the complaint to determine when the allegedly violative conduct occurred.

All of the conduct at issue allegedly occurred between July 25, 2023 (when Plaintiff first contacted ATR) and December 4, 2023 (when Plaintiff recovered his truck) [Doc. 2 at Page ID # 15–18]. Thus, the limitations period would have closed, at the latest, on December 4, 2024. Plaintiff filed this complaint more than a year later, on May 29, 2026. Plaintiff does not allege any facts that occurred within the limitations period, making the continuing violation doctrine inapplicable. Therefore, accepting all of the allegations of the complaint as true, Plaintiff's ADA claims are barred by the statute of limitations.[3]

---

[3] Plaintiff's state law claims, addressed below, may be subject to a separate analysis by a reviewing court. *See*, *e.g.*, Tenn. Code Ann. § 28-1-105; *Olsmith v. Yellow Freight Sys., Inc.*, 957 F. Supp. 128, 132 (M.D. Tenn. 1997) (discussing requirements for application of Tennessee savings statute to potentially time-barred claims). But that statute has no bearing on the ADA claims here, because Plaintiff never alleged any violation of the ADA, or facts to support such a violation, in the First Lawsuit. *See A.S. by Next Friend Reid v. Shelby Cnty. Bd. of Educ.*, No. 2:19-cv-02056-JTF-cgc, 2020 WL 1516808, at *3 (W.D. Tenn. Mar. 30, 2020) (holding savings statute inapplicable to ADA retaliation claim where original retaliation claim was brought solely under the GTLA); *Watson v. MDHA/HUD*, No. 3:18-cv-01024, 2019 WL 13258552, at *5 (M.D. Tenn. Jan. 15, 2019) (holding claims under ADA arising from events taking places outside limitations window are time-barred). Further, the savings statute would not apply to any individuals not named in the First Lawsuit. *See Griffin v. City of Columbus*, 10 F. App'x 271, 273 (6th Cir. 2001) ("[t]he savings statute did not apply to [plaintiff's] claims against [defendants], as they were not parties in the prior action."). Thus, Plaintiff's claims against Defendants CIS, Larry Bailey, Michael Phillips, 319 January, Wick Spears, and Thomas Hyde, must be dismissed as time-barred, because they were not named in the operative complaint in the First Lawsuit.

*2. Plaintiff Lacks Standing to Assert a Title III Claim*

To the extent Plaintiff asserts any Title III claims, it is well settled that "Title III authorizes only injunctive relief, not monetary damages, to successful plaintiffs." *Abeyta v. Stonecrest Med. Ctr.,* No. 3:18-CV-0386, 2018 WL 3472820, at *3 (M.D. Tenn. July 18, 2018); *see also* 42 U.S.C. § 12188(a)(1); 28 C.F.R. § 36.501. "[A] private party must establish standing to seek injunctive relief under the ADA." *Powell v. Bartlett Med. Clinic and Wellness Ctr.,* No. 2:20-CV-02118, 2021 WL 243194, *6 (S.D. Ohio Jan. 25, 2021) (citation omitted). To establish standing within the context of an ADA Title III claim, the Sixth Circuit requires a plaintiff to demonstrate: (1) a concrete and particularized injury in fact; (2) the injury is traceable to defendant's challenged conduct, and (3) it is likely a favorable decision would redress the injury. *Id. at* *6–7 (citing *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019)). However, where a plaintiff seeks injunctive relief, the plaintiff must show "past injury and a real and immediate threat of future injury." *Mosley,* 942 F.3d at 756 (citations omitted).

The allegations of the complaint are insufficient to establish standing to seek injunctive relief under ADA Title III. Even if the Court assumes Plaintiff has established a past injury in this case, the Court finds Plaintiff has not alleged any set of facts demonstrating an "immediate threat of future injury." The Sixth Circuit has explained that, within the context of a Title III ADA public accommodation claim for injunctive relief, "a plaintiff demonstrates the requisite threat of future injury where he establishes (1) a plausible intent to return to the noncompliant accommodation or (2) that he would return, but is deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers." *Gaylor v. Hamilton Crossing CMBS,* 582 Fed. App'x 576, 580 (6th Cir. 2014) (citations omitted). A "plausible intent to return" can be determined from a plaintiff's allegations or any resulting inferences. *Powell,* 2021 WL 243194, *7 (citations omitted).

The complaint here contains no such allegations. Indeed, Plaintiff's allegations make clear that his relationship with Defendants was severed in December 2023. He does not assert any intent to return to any of Defendants' establishments [Doc. 2]. In fact, Plaintiff specifically states he sought out other companies to complete his needed semi-truck repairs [*Id.* at Page ID # 17]. Plaintiff also does not expressly assert that he *would* return to Defendants' places of business but for any alleged accessibility barriers [*Id.*]. In fact, the Court infers from Plaintiff's allegations that he would never wish to use Defendants' services again [*Id.*]. Accordingly, Plaintiff does not assert a plausible threat of future injury and lacks standing to assert an ADA Title III claim.

*3. The Allegations of the Complaint are Insufficient to Support the ADA Claims*

Plaintiff fails to allege sufficiently detailed facts to plausibly state a claim for violation of his rights under the ADA. First, Plaintiff generally refers to all Defendants collectively, failing to attribute any specific actions, conduct, or events to individually-named Defendants [Doc. 2 at Page ID # 15–18]. Specifically, Plaintiff's Complaint does not assert that any conduct by Defendants Larry Bailey, Michael Phillips, 319 January, Wick Spears, or Thomas Hyde violated his rights and thus is not specific enough to state a claim against these Defendants.

Second, even where Plaintiff does attribute specific conduct to Defendants ATR [*Id.* at Page ID # 15–16, ¶¶ 24, 32], Aaron Black [*Id.* at Page ID # 15–17, ¶¶ 24, 25, 30, 36], and CIS [*Id.* at Page ID # 16, ¶ 29], such allegations are insufficient. Take, for example, Plaintiff's assertion that "[d]efendants placed Plaintiff's semi-truck on property controlled and/or utilized by [CIS]" [*Id.* at Page ID # 16]. This allegation is devoid of any reference to actionable conduct on the part of CIS. Further, Plaintiff's only allegations against ATR specifically are that, on July 25, 2023, Plaintiff contacted ATR about towing and repair of Plaintiff's semi-truck, and on October 6, 2023,

an individual named Andrew Smith[4] paid ATR about $1,275 on Plaintiff's behalf [*Id.* at Page ID # 15-16]. Again, Plaintiff does not attribute any specific conduct to ATR that allegedly violates his rights.

The only Defendant against whom Plaintiff alleges any conduct that may have violated his rights is Aaron Black:

> 30. After obtaining possession of the vehicle, Defendant Aaron Black repeatedly attempted to purchase Plaintiff's semi-truck. Plaintiff repeatedly declined …
>
> 36. During communications regarding disputed charges and repair arrangements, Defendant Aaron Black directed threatening, intimidating, abusive, and profane language toward Plaintiff and third parties assisting Plaintiff.

[*Id.* at Page ID #16-17]. Accordingly, the Court will assess whether Plaintiff has established an ADA Title III and/or Title V violation specifically related to this conduct attributed by Plaintiff to Defendant Aaron Black.

a. Plaintiff's Title III Claim

ADA Title III asserts, "No individual shall be discriminated against **on the basis of disability** in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added). A viable discrimination claim under § 12182 has three elements: "(1) [the plaintiff] has a disability; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against [the plaintiff] on the basis of his disability in the full and equal enjoyment of that place of public accommodation." *Snyder v. Lady Slings the Booze*, LLC, 73 F. Supp. 3d 871, 874 (W.D. Ky. 2014) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[4] Andrew Smith is not named as a party, and does not appear anywhere else in the body of the complaint.

Plaintiff's only allegations pertaining to Defendants generally are wholly conclusory. For example, Plaintiff alleges that Defendants "intentionally leveraged Plaintiff's disability-related dependence upon his semi-truck for mobility and transportation[,]" without providing any further detail, and asserts Defendants "imposed discriminatory barriers affecting Plaintiff because of his disability-related mobility limitations[,]" without identifying any such barriers [Doc. 2 at Page ID # 19]. The Court finds these allegations insufficient as a matter of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Dibrell v. PNC Bank, N.A., et al.*, No. 3:26-cv-312, 2026 WL 2719271, at * 5 (E.D. Tenn. Sept. 15, 2026) (granting motion to dismiss where complaint contained "general and conclusory allegations [that] are insufficient to state a claim" for violation of federal statute). As to Aaron Black, Plaintiff only asserts that Mr. Black repeatedly attempted to purchase Plaintiff's semi-truck and "directed threatening, intimidating, abusive, and profane language toward Plaintiff and third parties assisting Plaintiff." [Doc. 2 at Page ID # 16-17]. However, Plaintiff does not allege that either activity by Defendant Aaron Black was motivated by Plaintiff's disability. Accordingly, Plaintiff has failed to state a valid ADA Title III discrimination claim.

b. Plaintiff's Title V Claim

ADA Title V asserts, "[n]o person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this chapter…" ("retaliation claim") and "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of… any rights granted or protected by this chapter" ("interference claim") 42 U.S.C. §12203(a), (b). As Plaintiff is asserting a retaliation claim and interference claim [Doc. 2 at Page ID # 19-20], the Court will take each in turn.

A viable retaliation claim under § 12203(a) has four elements: "(1) [the plaintiff] engaged in activity protected under the ADA; (2) the [entity] knew of that activity; (3) the [entity] took an adverse action against [the plaintiff]; and (4) there was a causal connection between the protected activity and the adverse action." *Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 767 (6th Cir. 2025), *cert. denied*, No. 25-6798, 2026 WL 1640855 (June 8, 2026). A protected activity is "an action taken to protest or oppose a statutorily prohibited discrimination." *Id.* (internal quotation marks omitted). Here, the only relevant conduct Plaintiff attributes directly to a specific Defendant is that "[d]uring communications regarding disputed charges and repair arrangements, Defendant Aaron Black directed threatening, intimidating, abusive, and profane language toward Plaintiff and third parties assisting Plaintiff." [Doc. 2 at Pate ID # 17]. Accordingly, Plaintiff clearly asserts that he questioned Defendant but only to "dispute charges and repair arrangements," [*Id.*], not to "protest or oppose a statutorily prohibited discrimination." *Pemberton,* 150 F.4th at 767. Accordingly, Plaintiff has failed to assert a viable retaliation claim.

The Sixth Circuit has not expressly stated the elements of an interference claim under § 12033(b). *Catchings v. Hazel Park Sch. Dist.,* No. 2:23-CV-11313, 2025 WL 2640419, *5 (E.D. Mich. Sep. 12, 2025). However, in an ADA Title V interference claim, the Sixth Circuit has used a Seventh Circuit four-part test for an anti-interference claim under the Fair Housing Act. *Kelly v. Graphic Packaging Int'l, LLC,* 2025 WL 573766, *4 (6th Cir. 2025). That test requires a Plaintiff to demonstrate:

> [S]he engaged in activity statutorily protected by the ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate.

*Frakes v. Peoria Sch. Dist. No. 150,* 872 F.3d 545, 550-51 (7th Cir. 2017). As noted above regarding Plaintiff's ADA Title III claim, Plaintiff has not provided any facts supporting the conclusory assertion that Defendants' conduct was motivated by discriminatory intent. Accordingly, Plaintiff cannot satisfy the fourth element, and Plaintiff has failed to assert a viable interference claim.

*D. State Law Claims*

As explained above, Plaintiff also asserts six causes of action against Defendants under Tennessee state law [Doc. 2 at Page ID # 20-23]. As set forth above, the Court recommends dismissal of all federal statutory claims over which the Court has original jurisdiction. Therefore, the Court should decline to exercise supplemental jurisdiction over Plaintiff's related state law claims. 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction).

*E. IFP Application*

Because the Court will recommend this case be dismissed in its entirety, it is unnecessary to discuss the patent deficiencies in Plaintiff's IFP Application in any detail or to require Plaintiff to file a corrected IFP Application. However, given the procedural history of this case and its previously filed counterpart, the Court notes that Plaintiff's IFP Application suffers from most if not all of the same deficiencies as it did in the First Lawsuit [*See* Doc. 1; Case No. 1:24-cv-339, Doc. 8].[5] Accordingly, Plaintiff's case should be dismissed with no filing fee assessed, and his IFP Application should be terminated as moot.

[5] For example, Plaintiff's IFP Application: (1) totals the amount of his monthly living expenses as $674.00, but upon review the total amount of his monthly living expenses may actually be $774.00; (2) reports no income, no public assistance such as food stamps, and no explanation as to how he meets his monthly expenses and affords the necessities of life; (3) states that Plaintiff owns his residence and has lived at his residence for one year, but Plaintiff failed to report the residence as an asset; (4) lists no mortgage expense amount paid per month nor the outstanding mortgage

## III. CONCLUSION

For the reasons set forth above, the Court respectfully **RECOMMENDS**[6] this case be **DISMISSED** and Plaintiff's IFP Application [Doc. 1] be **TERMINATED AS MOOT**.

Plaintiff is **NOTIFIED** that the Court will not consider any other kind of motion for relief until after this report and recommendation has been addressed by the presiding District Judge and the screening process under § 1915(e) is complete. Any such motions are subject to being summarily denied.

ENTER:



/s/

MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE

balance; (5) does not list water, electricity, or gas expenses in his monthly expenses; and (6) lists two semi-trucks as assets and listed a debt in the amount of $22,000 to Big Rig Lending, but did not list as an expense any monthly loan payment [Doc. 1].

[6] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).